NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4354
_____

VICTOR F. NOVAK, II, M.D., F.A.C.S.,
Appellant

v.

SOMERSET HOSPITAL; MICHAEL J. FARRELL;
M. JAVAD SAADAT, M.D.; PETER T. GO, M.D.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(No. 3-07-cv-00304)
District Judge: Hon. David. S. Cercone

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on July 14, 2015

Before: SMITH, GREENAWAY, JR., and SHWARTZ, Circuit Judges

(Opinion filed August 20, 2015)

_____

OPINION*

_____

GREENAWAY, JR., Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Victor Novak, M.D. ("Appellant" or "Novak") brought various antitrust allegations against Somerset Hospital, Michael Farrell (Somerset Hospital CEO), Dr. M. Javad Saadat, and Dr. Peter T. Go (collectively "Appellees"). The District Court granted summary judgment in favor of Appellees. We will affirm.

## I. BACKGROUND

Novak is a general surgeon located in Somerset, Pennsylvania. He joined the staff of Somerset Hospital in 1993 and since then, has practiced as an independent general surgeon in Somerset and Cambria Counties. Somerset Hospital is located 32.5 miles from Conemaugh Hospital and is approximately equidistant to two other hospitals — Meyersdale Hospital and Windber Hospital. In 1998, Novak joined Conemaugh Hospital's medical staff and, during the following seven years, he held privileges at both Somerset and Conemaugh Hospitals. During that time, Novak performed surgeries at both facilities.

Somerset Hospital is a community hospital and is a smaller and less comprehensive facility than Conemaugh Hospital.[1] Somerset Hospital's primary service area is comprised of the seventeen zip-codes located within its ten-mile radius. Somerset Hospital draws 90% of its patients from this area. Based on 2005 patient data, 21.6% of the patients in Somerset Hospital's primary service area went to Conemaugh Hospital for

---

[1] Between 2006 and 2008 over 27,000 surgeries were performed at Conemaugh Hospital. During the same period, only 7,184 surgeries were performed at Somerset Hospital.

inpatient general surgery services and 22.36% went to other hospitals for general surgery services.[2]

In August 2005, Novak performed two surgeries without proper authority. Based on these transgressions, Somerset Hospital terminated Novak's privileges. He has continued to work at Conemaugh Hospital and maintains an office in Somerset County, close to Somerset Hospital.

Novak brought the instant action against Appellees alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and seeking an injunction (and reinstatement of privileges at Somerset Hospital) under Section 16 of the Clayton Act, 15 U.S.C. § 26.[3] At bottom, Novak's argument is that Farrell, Saadat, Go, and various Somerset Hospital board members conspired to terminate his privileges, thereby "allow[ing] Somerset to reduce the likelihood that its patients would be treated at Conemaugh." Appellant's Br. at 6. This, he argues, has illegally restrained patient choice for general surgical services in Somerset. He acknowledges that "Conemaugh . . . provides substitute services for Somerset," but argues that "Somerset does not provide substitute services for [] larger tertiary care hospitals" such as Conemaugh Hospital. *Id.* at 22.

---

[2]     In other words, in 2005, nearly 44% of the patients in Somerset Hospital's primary service area obtained general surgery services elsewhere.

[3]     Novak also brought various state law claims, over which the District Court declined to exercise supplemental jurisdiction and which it dismissed without prejudice. That decision is not before us on appeal.

3

The District Court determined that Novak did not show that he was shut out of the relevant market or that patient choice was restrained. Therefore, the District Court concluded, as a matter of law, that Novak failed to establish antitrust injury and granted summary judgment in favor of Appellees. We will affirm.

## II. ANALYSIS[4]

"For plaintiffs suing under federal antitrust laws, one of the prudential limitations is the requirement of 'antitrust standing.'" *Ethypharm S.A. Fr. v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998)) (footnote omitted). Antitrust standing augments the "case or controversy" requirement under Article III, but "does not affect the subject matter jurisdiction of the court." *Id.* Rather, it simply "prevents a plaintiff from recovering under the antitrust laws." *Id.*

The Supreme Court has articulated several factors that guide our analysis of whether a plaintiff has antitrust standing:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce

---

[4] The District Court had jurisdiction over Novak's federal antitrust claims pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and review the facts in the light most favorable to the nonmoving party. *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011). We will affirm if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Ethypharm*, 707 F.3d at 232–33 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983)). "The second factor, antitrust injury, 'is a necessary . . . condition of antitrust standing.' If it is lacking, [a court] need not address the remaining [] factors." *Id.* at 233 (quoting *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997)) (citation omitted). To state a viable antitrust injury, a plaintiff must generally show that he is a competitor or a consumer in the relevant product and geographic markets in which competition was adversely impacted. *See id.*

### A.    Relevant Product Market

The relevant "product market" is comprised of "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 394 (1956). Interchangeability "implies that one product is roughly equivalent to another . . . [and] while there might be some degree of preference for the one over the other, either would work effectively." *Allen-Myland, Inc. v. Int'l Bus. Machs. Corp.*, 33 F.3d 194, 206 (3d Cir. 1994).

Novak argues that, by virtue of his Somerset Hospital privileges being terminated, he has been prevented from providing general and gastrointestinal ("GI") surgery services to the patient base he served while at Somerset Hospital. He further argues that "tertiary care hospitals such as Conemaugh are not in the same product market as

5

Somerset" because Conemaugh Hospital offers more comprehensive services than Somerset Hospital. Appellant's Br. at 42.

As the District Court stated, the fact that Conemaugh Hospital is "a larger, more comprehensive facility," than Somerset Hospital does not provide a "rational basis . . . for concluding that the general/GI surgical services offered at Conemaugh are not reasonable substitutes for those same types of services offered at Somerset Hospital."[5] App. at 29. Accordingly, we agree with the District Court's conclusion that Novak's "product market definition . . . provides no rational basis for distinguishing between [general]/GI surgical services [at Somerset Hospital] and [general]/GI surgical services in the larger facilities like Conemaugh." App. at 29.

## B. Relevant Geographic Market

"The relevant geographic market is the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 260 (3d Cir. 1984). As Novak's expert recognized, in 2005 more than 32% of patients from Somerset Hospital's primary service area were admitted to Conemaugh, Meyersdale, and Windber Hospitals. As such, Novak's attempt to define the relevant geographic market as *only* Somerset Hospital is illogical and inconsistent with the record.

This conclusion is further supported by Novak's own argument that Farrell sought to terminate Novak's privileges at Somerset Hospital in part because "Farrell disapproved

---

[5] As an example, when Somerset Hospital placed a moratorium on certain bariatric surgeries, Novak moved all of his bariatric surgeries to Conemaugh Hospital.

6

of Dr. Novak's treatment of patients at Conemaugh because it reduced income to Somerset." Appellant's Br. at 6. This argument necessarily (and correctly) assumes that potential patients seeking the surgical services Novak provides would rationally look to both Somerset and Conemaugh Hospitals. Accordingly, Novak's definition of the relevant geographic market is legally insufficient.

When the relevant product and geographic markets are properly defined as including general/GI surgical services at Somerset and Conemaugh Hospitals, there is no evidence that Novak was shut out of the relevant market or that patient choice was restrained so as to demonstrate an actionable antitrust injury. *See Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996). Because Novak failed to do so, we agree with the District Court that he lacks antitrust standing to pursue his claims and need not address the other antitrust standing factors.

## III.   CONCLUSION

In light of the foregoing analysis, we will affirm the District Court's grant of summary judgment in favor of Appellees.